# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN SHIFFKA,** | : | **Civil No. 1:16-CV-1506** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **NANCY BERRYHILL,** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

## I.    Introduction

The Social Security Administration oversees a number of programs designed to assist those facing medical challenges. For example, under Title II of the Social Security Act, the Commissioner provides disability insurance benefits for workers who have become disabled.  42 U.S.C. § 423. Title XVI of the Social Security Act, in turn, establishes the Supplemental Security Income benefit program, or SSI. "The SSI program, which is another public assistance program established by federal statute, see 42 U.S.C. §§ 1381–1383 (1982), provides cash grants to low-income individuals who are aged, blind, or disabled. 42 U.S.C. § 1381 (1982)." Com. of Pa. v. United States, 752 F.2d 795, 797 (3d Cir. 1984).

These two programs, which are part of a broader and more comprehensive network of care for the infirm and disabled, each have their own eligibility requirements and standards. Moreover, as the Commissioner has long acknowledged the requirements to qualify for benefits under Title II and Title XVI differ in a number of material respects. <u>See</u> SSR 83-20, 1983 WL 31249. Thus. Title II provides for some retroactive benefits whereas Title XVI does not. <u>Id</u>. Moreover, unlike Title XVI applicants, "[a] title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s)." <u>Id</u>. Thus, while claimants may apply for both forms of relief under the Act, the availability of relief under Title II and Title XVI may differ significantly, requiring independent evaluation of any claim made under both provisions of the law.

In particular, oftentimes the periods of eligibility for benefits under these two programs will vary widely. In such a setting: "[b]ecause [a] plaintiff's Title II and Title XVI claims are based on separate periods of eligibility, and therefore on separate evidence, they [should] be individually reviewed." <u>Baxter v. Schweiker</u>, 538 F. Supp. 343, 346 (N.D. Ga. 1982). Given the fact that Title II and Title XVI claims are often based upon separate eligibility periods, each class of claims warrants a separate analysis, even though the substantive standards which govern

review of the merits of the claims are largely identical.  See Bowen v. Galbreath, 485 U.S. 74, 79, 108 S. Ct. 892, 895, 99 L. Ed. 2d 68 (1988)(citing legislative history indicating Congress' intent to make judicial review under Title II and Title XVI "virtually identical," to "provide the same rights to ... judicial review" under both Titles, and "to apply the same rules of judicial review to Title XVI cases as apply to Title II cases.")

This case aptly illustrates the importance of conducting independent review of Title II and Title XVI claims due to their separate eligibility periods. In the course of protracted Social Security disability proceedings, the plaintiff, Kevin Shiffka, initially sought benefits solely under Title II of the Social Security Act, 42 U.S.C. § 423, but later amended his claims to include a request for benefits pursuant to Title XVI of the Social Security Act. 42 U.S.C. §§ 1381–1383. In Shiffka's case, these two applications had different eligibility periods, and the medical evidence relating to these two different eligibility periods was markedly different.

While the ALJ assigned to this case is to be commended for initially identifying Shiffka's potential eligibility for benefits under both Title II and Title XVI, the agency proceedings and decisions in this case are marked by some confusion and conflation of these distinct claims and their separate eligibility

periods. Moreover, this confusion and potential conflation of these claims was potentially prejudicial to the plaintiff since there is some indication that the additional mental health evidence presented to the ALJ on remand related solely to the benefit eligibility period for the Title II claim and did not separately consider the very different time frame embraced by Shiffka's Title XVI claim.

On these facts, for the reasons set forth below, it is recommended that this case be remanded for further individualized consideration of Shiffka's Title II and Title XVI claims.

## II.     Statement of Facts and of the Case

Kenneth Shiffka was born on August 26, 1969, (Tr. 255), and was approximately 41 years old when he applied for Title II disability insurance benefits on April 18, 2011. (Tr. 297.) In this Title II disability insurance application Shiffka alleged that he had become disabled on or about December 15, 2010, as a result of a constellation of physical and emotional impairments. (Id.) With respect to this initial Title II disability application, the benefit eligibility period for Shiffka spanned from the date of onset of disability to the date last insured since: "[a] title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s)." Titles II & XVI: Onset of Disability, SSR 83-20 (S.S.A.

1983). The date of Shiffka's alleged onset was December 15, 2010. The date last insured, during which Shiffka satisfied Title II's insurance requirements was determined to be March 31, 2013. (Tr. 25.) Thus, to prevail on this Title II claim it was incumbent upon Shiffka to prove that he suffered from disabling impairments at sometime between December 2010 and March 2013.

In support of this claim Shiffka presented evidence which showed, and the ALJ ultimately found, that he suffered from multiple severe impairments including obesity, hiatal hernia, obstructive sleep apnea, arthritis, rheumatic disease of the aorta, chronic pulmonary obstructive disease, depression and anxiety disorders. (Tr. 26.) According to Shiffka the combined effects of these medical and emotional conditions had rendered him homeless and driven him to the margins of society. Thus, Shiffka has testified at various times that he has been forced to live out of his car (Tr. 181-82), stay in the woods behind a Burger King restaurant, or has occasionally "crashed" on the attic floor of a friend's home. (Tr. 122.)

A hearing on Shiffka's initial Title II application was conducted on August 6, 2012, (Tr. 179), and on November 27, 2012, an ALJ issued a decision denying this claim. (Tr. 245.) Shiffka sought Appeals Council review of this adverse decision, and on July 2, 2014, the Appeals Council vacated the ALJ decision and

remanded Shiffka's case for another hearing. (Tr. 262.) This remand order focused on Shiffka's severe emotional impairments and what the Appeals Council found to be an inadequate assessment of those emotional conditions. Acknowledging a need to further and more fully develop this evidence the Appeals Council directed in part that the ALJ:

> Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513), including a consultative psychological examination and medical source statement about what the claimant can still do despite his mental impairments.

(Tr. 264.)

On remand, the ALJ then conducted two hearings, on September 24, 2014 and December 22, 2014. (Tr. 43-82, 109-158.) The ALJ also obtained additional evidence relating to Shiffka's mental health, albeit in a fashion that was materially different than the course prescribed by the Appeals Council in its remand order. Instead of pursuing a consultative examination as instructed by the Appeals Council, which would have provided a contemporaneous and real-time assessment of Shiffka's mental state in 2014, on November 10, 2014 the ALJ tendered interrogatories and Shiffka's prior medical records to a non-examining, non-treating source, Dr. Jeffrey Fermont. (Tr. 23, 1748-71.) Dr. Fremont then

completed a psychological assessment of Shiffka based solely upon these medical records on November 15, 2014. (Tr. 1762-5.) Dr. Fremont also testified concerning these matters at the December 2014 disability hearing held in Shiffka's case. (Tr. 58-66.)

At the time of these proceedings, the only active application that Shiffka had pending was an application for Title II benefits. As to this application, the relevant period for determining disability was from the date of onset, December 15, 2010, to Shiffka's date last insured, March 31, 2013. Accordingly, the transcript of these proceedings reveals that the ALJ and Dr. Fremont focused their attention and analysis on medical matters relating to this Title II eligibility period. Thus, Dr. Fremont, the psychological expert, in his December 2014 hearing testimony specifically limited his opinion and analysis to the period that ended with Shiffka's date late insured, March 31, 2013. (Tr. 59 and 66.) Moreover, when the ALJ questioned the doctor about these medical matters, both the ALJ and Dr. Fremont seemed to agree on the record that they were not considering matters which occurred after March 2013.[1] The ALJ imposed the same chronological constraints

---

[1] For example, in the course of questioning Dr. Fremont that ALJ and the doctor engaged in the following exchange:

Q [by ALJ]          Well that's after the date last insured.

upon the plaintiff at the September 2014 disability hearing for Shiffka, where the ALJ noted that:

> I am looking at from your alleged onset of disability of December 15, 2010 through your date last insured, March 31, 2013. Okay. I'll call that the relevant period.....that really is the end date that I have to look at; okay? (Tr. 123.)

Yet, even as the ALJ seemed to temporally and topically limit the scope of this remand to Shiffka's Title II application and its December 2010 to March 2013 eligibility period, the ALJ also set in motion a series of events which would broaden the scope of this case by inquiring in September of 2014 into whether Shiffka might separately be entitled to Title XVI benefits. (Tr. 124.) Ultimately, Shiffka applied for Title XVI benefits in Janaury of 2015 claiming a protective filing date of Spetember 25, 2014. (Tr. 343-354.) This January 2015 Title XVI benefit application, therefore, was submitted after the close of these evidentiary hearings conducted on remand, and the ALJ expressly agreed to address both of these applications based upon the evidence presented on remand in the decision rendered in this matter. (Tr. 23.)

---

A [by doctor]     Oh, so we're not going to even consider that. Okay.

Q [by ALJ]        Yeah.

(Tr. 66.)

The belated inclusion of a Title XVI claim in this case following the close of the evidence has legal significance in this matter due to differences in these two benefit programs. Title XVI Supplemental Security Income, or SSI, benefits are a "public assistance program established by federal statute, see 42 U.S.C. §§ 1381–1383 (1982), [which] provides cash grants to low-income individuals who are aged, blind, or disabled. 42 U.S.C. § 1381 (1982)." Com. of Pa. v. United States, 752 F.2d 795, 797 (3d Cir. 1984). Title XVI benefits are also subject to very different eligibility periods than Title II benefits. As the Social Security Administration has explained: "Under title XVI, there is no retroactivity of payment. Supplemental security income (SSI) payments are prorated for the first month for which eligibility is established after application and after a period of ineligibility. Therefore, except for certain cases of aliens where an exact onset date of disability must be determined for eligibility purposes, the only instances when the specific date of onset must be separately determined for a title XVI case is when the onset is subsequent to the date of filing or when it is necessary to determine whether the duration requirement is met." Titles II & XVI: Onset of Disability, SSR 83-20 (S.S.A. 1983). Thus, for Shiffka the eligibility period for Title XVI benefits began on September 25, 2014, the date deemed to be the

protective filing date of this SSI application. In contrast, the eligibility time frame for Shiffka's Title II application was December 2010 through March 2013.

It is unclear from the record of these administrative proceedings whether the ALJ fully recognized the difference between these two eligibility time frames when these two applications were combined for analysis and decision. Further, it seems clear that the only new psychological evidence adduced on remand was specifically limited to the period of Title II benefit eligibility, an eligibility period that came to a close in March of 2013. Indeed, during the December 2014 remand hearing it appears that the ALJ and Dr. Fremont both expressly agreed that the doctor's opinion testimony would be limited to that Title II benefit eligibility period. (Tr. 66.) Thus, this opinion evidence cannot be viewed as addressing or speaking to Shiffka's eligibility for Title XVI benefits, an eligibility period that commenced 18 months later when he protectively sought these benefits in September of 2014. Furthermore, the ALJ's decision to forego a consultative examination of Shiffka in the Fall of 2014 deprived this decision-maker of any contemporaneous evaluation of Shiffka's emotional state during the eligibility period for Title XVI benefits. The absence of this information appears to be material in this case, particularly when one considers the Title XVI benefit application, because as the ALJ noted some medical records indicated that Shiffka

was profoundly impaired emotionally in the Autumn of 2014. Specifically, Shiffka was assessed with a global assessment of functioning, or GAF, score of 41-50 by the Community Counseling Services in October 2014. (Tr. 33.)

This is a material finding during the Title XVI benefit eligibility period since a GAF score, or a Global Assessment Functioning score, was a psychometric tool which took into consideration psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric Association, 2000. ("DSM-IV-TR"). In this regard, GAF scores "in the range of 61–70 indicate 'some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning.' Diagnostic and Statistical Manual of Mental Disorders ('DSM IV') 34 (American Psychiatric Assoc. 2000). GAF scores in the 51–60 range indicate moderate impairment in social or occupational functioning." <u>Cherry v. Barnhart</u>, 29 Fed.Appx. 898, 900 (3d Cir. 2002). <u>DaVinci v. Astrue</u>, 1:11-CV-1470, 2012 WL 6137324 (M.D. Pa. Sept. 21, 2012) <u>report and recommendation adopted, Davinci v. Astrue,</u> 1:11-CV-1470, 2012 WL 6136846 (M.D. Pa. Dec. 11, 2012). "A GAF score of 41–50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school

functioning (e.g., no friends, unable to keep a job).' DSM–IV at 34. A score of 50 is on the borderline between serious and moderate symptoms." Colon v. Barnhart, 424 F. Supp. 2d 805, 809 (E.D. Pa. 2006). See Shufelt v. Colvin, No. 1:15-CV-1026, 2016 WL 8613936, at *2 (M.D. Pa. Sept. 15, 2016), report and recommendation adopted sub nom. Shulfelt v. Colvin, No. 1:15-CV-1026, 2017 WL 1162767 (M.D. Pa. Mar. 29, 2017). Thus the GAF scores assessed for Shiffka in October 2014 were emblematic of serious psychological symptoms and impairment.

On January 30, 2015 the Administrative Law Judge (ALJ) issued a decision denying both Shiffka's Title II DIB application and his separate Title XVI SSI application. (Tr. 19-36.) While that decision acknowledged the existence of these two applications, and denied both applications, we cannot discern from the decision whether the ALJ fully recognized, considered or reconciled the fact that the applications covered divergent eligibility periods separated by more than a year. Thus, we cannot conclude from the decision the degree to which evidence relating to one claim may have been conflated into the analysis of a separate and distinct claim. This is a material ambiguity in the ALJ's decision since there is some indication of conflation of evidence and claims in that opinion. In particular, the ALJ's decision relies substantially on Dr. Fremont's testimony and analysis to

supplement the record relating to Shiffka's mental health impairments, as mandated by the Appeals Council. Yet, Dr. Fremont's testimony specifically limited the doctor's analysis to the period of eligibility for Title II benefits, an eligibility period which ended on March 31, 2013. Thus, this opinion evidence did not and cannot reasonably be construed as addressing Shiffka's mental health at the beginning of the eligibility period for his application for Title XVI benefits, an eligibility period that commenced in September of 2014. Yet, this evidence— which did not pertain to the Title XVI benefit eligibility period—was afforded great weight by the ALJ in a decision that denied these Title XVI benefits. (Tr. 34.)

This appeal followed. (Doc. 1.) On appeal, Shiffka argues that, in part, that the failure of the ALJ to clearly delineate and separately analyze these Title II and Title XVI benefit claims, which had very different eligibility periods, requires further consideration of this case by the Commissioner on remand. This appeal is fully briefed by the parties and is, therefore, ripe for resolution.

For the reasons set forth below, we submit that the potential confusion and conflation of these Title II and Title XVI claims calls for a remand of this action so that each claim can be properly analyzed and the evidence that is relevant to each claim can be independently weighed and assessed. In reaching this result, we

acknowledge a fact which was not adequately addressed by the ALJ in this decision  but is material in this case; namely, "plaintiff's Title II and Title XVI claims are based on separate periods of eligibility, and therefore on separate evidence, [accordingly] they [should] be individually reviewed." Baxter v. Schweiker, 538 F. Supp. 343, 346 (N.D. Ga. 1982). Adopting this analytic lens, for the reasons set forth below, we recommend that the remand this case for further, and distinct, consideration of Shiffka's Title II and Title XVI applications.

## III.  Discussion

### A. Substantial Evidence Review – the Role of the Administrative Law Judge and the Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the Administrative Law Judge (ALJ) and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a).  To satisfy this

requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's

17

decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d

Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

The necessity of a clear articulation of the evidence relied upon by an ALJ is heightened when the ALJ is simultaneously addressing Title II and Title XVI claims. As we have noted, Title II of the Social Security Act provides for disability insurance benefits for workers who have become disabled. 42 U.S.C. § 423. Title XVI of the Social Security Act, in turn, establishes the Supplemental Security Income benefit program, or SSI, "which is another public assistance program established by federal statute, see 42 U.S.C. §§ 1381–1383 (1982), [that] provides cash grants to low-income individuals who are aged, blind, or disabled. 42 U.S.C. § 1381 (1982)." Com. of Pa. v. United States, 752 F.2d 795, 797 (3d Cir. 1984).

These two programs, which are part of a broader and more comprehensive network of care for the infirm and disabled, each have their own eligibility requirements and standards. Moreover, as the Commissioner has long acknowledged the requirements to qualify for benefits under Title II and Title XVI

differ in a number of material respects. See SSR 83-20, 1983 WL 31249. For example, "[a] title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s)." Id. Thus, to prevail on his Title II claim it was incumbent upon Shiffka to prove that he suffered from disabling impairments at sometime between December 2010, the date of alleged onset, and March 2013, Shiffka's date last insured. In contrast, "Under title XVI, there is no retroactivity of payment. Supplemental security income (SSI) payments are prorated for the first month for which eligibility is established after application and after a period of ineligibility. Therefore, except for certain cases of aliens where an exact onset date of disability must be determined for eligibility purposes, the only instances when the specific date of onset must be separately determined for a title XVI case is when the onset is subsequent to the date of filing or when it is necessary to determine whether the duration requirement is met." Titles II & XVI: Onset of Disability, SSR 83-20 (S.S.A. 1983). Thus, for Shiffka the eligibility period for Title XVI benefits began on September 25, 2014, the date deemed to be the protective filing date of this SSI application.

In such a setting it is well-established that: "[b]ecause [a] plaintiff's Title II and Title XVI claims are based on separate periods of eligibility, and therefore on

separate evidence, they [should] be individually reviewed." Baxter v. Schweiker, 538 F. Supp. 343, 346 (N.D. Ga. 1982). Given the fact that Title II and Title XVI claims are often based upon separate eligibility periods, each class of claims warrants a separate analysis, even though the substantive standards which govern review of the merits of the claims are largely identical. Furthermore, where the record of the proceedings before an ALJ reveal potentially prejudicial confusion and conflation of Title II and Title XVI claims, it has been held that a remand to the Commissioner to clarify the legal and factual basis for the determination of each claim is both fitting and proper. See e.g., Ireland v. Astrue, 256 F. App'x 79, 82 (9th Cir. 2007); Shufelt v. Colvin, No. 1:15-CV-1026, 2016 WL 8613936, at *8 (M.D. Pa. Sept. 15, 2016), report and recommendation adopted sub nom. Shulfelt v. Colvin, No. 1:15-CV-1026, 2017 WL 1162767 (M.D. Pa. Mar. 29, 2017); Gabaldon v. Barnhart, 399 F. Supp. 2d 1240, 1250 (D.N.M. 2005).

### B. A Remand For Separate and Independent Consideration of Shiffka's Title II and Title XVI Claims is Appropriate Here

As we have noted, in this case the "plaintiff's Title II and Title XVI claims are based on separate periods of eligibility, and therefore on separate evidence, [thus] they [should] be individually reviewed." Baxter v. Schweiker, 538 F. Supp. 343, 346 (N.D. Ga. 1982). Indeed, the difference in the relevant eligibility dates

between these two applications is significant and striking. With respect to Shiffka's Title II claim, his alleged date of onset was December 15, 2010 and his date last insured was March 31, 2013. Thus, to prevail on this claim Shiffka was required to demonstrate that he was wholly disabled during this period between December 2010 and March 2013. In contrast, Shiffka's Title XVI SSI application sought benefits for a markedly different period of time, beginning on September 25, 2014 and continuing up to the date of the ALJ's decision denying this application.

The material differences in the plaintiff's eligibility dates for these two forms of benefits was not clearly identified or addressed by the ALJ in the decision denying both forms of benefits. Since the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981), the ALJ's failure to adequately acknowledge the material differences between these two applications in terms of these eligibility dates and the relevant evidence relating to each eligibility period, standing alone, may compel remand. However, as we have noted, in some instances, the ALJ's decision does more than simply fail to sufficiently address this material fact. The decision actually seems to conflate evidence relating to one claim and apply that evidence in addressing Shiffka's separate and distinct claims.

Thus, the ALJ's decision seems to acknowledge that Shiffka's mental health worsened in 2014. (Tr. 32.) In fact, by October 2014, mental health professionals assessed Shiffka with a global assessment of function score of 41-50, a score which signified severe emotional impairment. (Tr. 33.) See Colon v. Barnhart, 424 F. Supp. 2d 805, 809 (E.D. Pa. 2006). This appears to be the only GAF score cited by the ALJ which pertained to the eligibility period for Title XVI benefits, and it is a GAF score that supported a finding of entitlement to Title XVI benefits. Yet, the ALJ denied such benefits to Shiffka placing "great weight" upon the report and testimony of Dr. Fremont in order to reject these clinical findings and to support the decision to deny Shiffka these benefits. (Tr. 34.) However, Dr. Fremont's testimony and report explicitly related only to the eligibility period for Shiffka's Title II benefits, an eligibility period which ended in March 2013, some 18 months prior to the protective filing date which defined Shiffka's eligibility for Title XVI benefits, September 25, 2014.

While a contemporaneous consultative psychiatric examination, like the examination recommended by the Appeals Council in its remand decision, might have provided clinical results during the Fall of 2014, the relevant time period for Shiffka's Title XVI claim, no such examination was undertaken. Instead, the ALJ relied upon interrogatories and testimony provided by Dr. Fremont prior to

Shiffka's submission of his Title XVI benefit application, which could not and did not address Shiffka's eligibility for these benefits. This is an error since the opinion evidence provided by Dr. Fremont was explicitly limited to Shiffka's Title II benefit claim, a claim whose eligibility period drew to a close 18 months earlier in March of 2013. Given the marked declined in Shiffka's mental health documented in medical records in the Fall of 2014, it cannot be said that this error was harmless. Therefore, further consideration of this matter, with a particularized analysis of both the Title II and Title XVI claim advanced by Shiffka is now required.

In sum, taken together we believe that these ambiguities, uncertainties and apparent inconsistences with respect to the treatment of Shiffka's Title II and Title XVI applications, which embraced separate periods of time and called for individualized consideration of distinct evidence, compels a remand of this case for further consideration by the Commissioner. Given the uncertainties inherent in the ALJ's treatment of these two distinct claims, we find that this evidence is insufficient to allow us to conclude that "substantial evidence" supports the ALJ's decision to reject either of these claims and a remand is now appropriate for separate consideration of each claim. Yet, while case law calls for a remand and further proceedings by the ALJ in this case independently assessing each of these

two claims, nothing in this report and recommendation should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that task should remain the duty and province of the ALJ on remand. Furthermore, because we have concluded that the conflation of Shiffka's Title II and Title XVI claims requires a remand in this matter we have not addressed Shiffka's other allegations of error in this case. Instead, those other matters may also be addressed in the first instance by the ALJ on remand.

## IV. <u>Recommendation</u>

Accordingly, for the forgoing reasons, IT IS RECOMMENDED that the decision of the Commissioner be REMANDED for further, separate and independent consideration of the plaintiff's Title II and Title XVI applications benefits. IT IS FURTHER RECOMMENDED THAT judgment be entered in favor of the plaintiff and the case marked closed.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which

objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and

Recommendation may constitute a waiver of any appellate rights.

Submitted this 1st day of September, 2017.


_s/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge